# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| YALI SONG,　　　　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　） | |
| 　　　　　　Petitioner,　　　　） | Case No.: 2:18-cv-00919-GMN-VCF |
| 　vs.　　　　　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　） | **ORDER** |
| JEANNE KENT, Director, Las Vegas Field ） | |
| Office of United States Citizenship and ） | |
| Immigration Services, in her official capacity; ） | |
| and UNITED STATES CITIZENSHIP AND ） | |
| IMMIGRATION SERVICES,　　　） | |
| 　　　　　　　　　　　　　　　　） | |
| 　　　　　　Respondents.　　　） | |

Pending before the Court is Petitioner Yali Song's ("Petitioner") Motion for Summary Judgment, (ECF No. 22). A Response and Cross-Motion for Summary Judgment, (ECF Nos. 25, 26), was filed by Respondents United States Citizenship and Immigration Services ("USCIS") and Jeanne Kent, director of the Las Vegas USCIS field office (collectively, the "Government"). Petitioner filed a Reply and Response, (ECF Nos. 27, 28), and the Government filed a Reply, (ECF No. 29).

## I.   BACKGROUND

Petitioner is a native and citizen of China, and she was born on July 29, 1986. (Pet. ¶ 6, ECF No. 1). On November 18, 2006, Petitioner and her mother entered the United States as K-1 and K-2 nonimmigrants.[1] (*Id.* ¶ 7). Petitioner was twenty years old at that time. (*Id.*).

Petitioner's mother married within ninety days of entering the United States. (*Id.* ¶ 8). Accordingly, on March 19, 2007, Petitioner and her mother each filed a separate Form I-485

---

[1] As the Government explains in its Motion to Dismiss, K-1 nonimmigrant status refers to an "alien" who is the fiancé of a United States citizen and seeking to enter the United States to get married within ninety days. (Mot. Dismiss ("MTD") 2:22–24); 8 U.S.C. § 1101(a)(15)(K)(i). Similarly, K-2 nonimmigrant status refers to a minor child of a K-1 nonimmigrant who is accompanying or following their parent to the United States. (*Id.* 2:23–26); 8 U.S.C. § 1101(a)(15)(K)(iii).

1  with USCIS to adjust their immigration status and register permanent residence in the United

2  States. (*Id.* ¶ 9).  USCIS granted Petitioner's mother's request; but USCIS denied Petitioner's

3  application on the ground that she turned twenty-one years old before USCIS adjudicated her

4  Form I-485, even though she both entered the United States and submitted her Form I-485

5  beforehand. (*Id.* ¶ 9).

6          In 2009, Petitioner filed her second Form I-485 to register permanent residence after

7  marrying a United States citizen. (*Id.* ¶ 10).  USCIS subsequently approved Petitioner's second

8  Form I-485 based on her marriage; and Petitioner received lawful permanent resident status on

9  December 1, 2009. (*Id.*).

10         Just over seven years after receiving permanent resident status, Petitioner filed an

11  Application for Naturalization ("Form N-400"), and underwent an interview. (*Id.* ¶ 11).  After

12  the interview, and upon review of Petitioner's immigration record, USCIS found that it had,

13  "unfortunately," granted Petitioner's permanent status in 2009 by mistake.[2] (*Id.* ¶ 12);

14  (Decision Denying Form N-400 at 37, Ex. I to Pet. Review, ECF No. 2).  USCIS consequently

15  denied Petitioner's naturalization application on April 19, 2017, because Petitioner had not

16  properly received lawful permanent residency in the United States. (*Id.* ¶ 12).

17         On May 25, 2017, Petitioner filed a Request for Hearing on Decision in Naturalization

18  Proceedings. (*Id.* ¶ 13).  In that Request, Petitioner's counsel conceded that USCIS mistakenly

19  granted her 2009 application for permanent residence. (Mem. Support Request for Hearing at

20  56, Ex. L to Pet. Review, ECF No. 2).  Nevertheless, Petitioner explained that a 2011 decision

21  by the Board of Immigration Appeals (in another matter) had essentially invalidated USCIS's

22  basis for denial of Petitioner's 2007 application for permanent resident status. (*Id.* at 56–60).

23

24  ─────────────────────

25  [2]  Petitioner's K-2 status allowed an adjustment to permanent status only on the basis of her mother's marriage to a United States citizen, yet the 2009 adjustment erroneously occurred on the basis of Petitioner's own marriage. *See* 8 U.S.C. § 1255(a)–(d); (MTD 5:1–14, ECF No. 11); (Pet. ¶ 10).

Specifically, Petitioner pointed out that the 2011 decision abrogated USCIS's prior finding that Petitioner "aged out" of eligibility for permanent residency under her K-2 nonimmigrant status. (*Id.*).  Thus, USCIS could approve her 2007 application *nunc pro tunc* by retroactively applying this new authority to remedy the "procedural hiccup" that prevented her naturalization. (*Id.*).  USCIS, however, denied Petitioner's request for *nunc pro tunc* relief and retroactive application of authority in its Decision on March 7, 2018, thereby reaffirming its denial of naturalization. (Decision Denying Form N-336 at 64–65, Ex. M. to Pet. Review, ECF No. 2); (Pet. ¶ 14).

Pursuant to 8 U.S.C. § 1421(c), Petitioner filed a Petition for Judicial Review in this Court on May 20, 2018, seeking a *de novo* review of USCIS's denial of naturalization. (*Id.* at 3).  The Government soon after moved to dismiss the Petition for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), (Mot. Dismiss ("MTD") 1:19–2:11, ECF No. 11), which the Court denied, (ECF No. 17).  In the underlying Motions, Petitioner and the Government both move for summary judgment in their respective favors. (Mots. Summ. J., ECF Nos. 22, 26).

## II.    <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual

data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III.  DISCUSSION

Petitioner requests that the Court recognize, upon new authority, that she possessed all qualifications to be a lawful permanent resident at the time of her 2007 application. (Pet. ¶ 15). Petitioner argues that she complied with that requirement, but her application was simply denied on a basis that has since been deemed invalid by *Matter of Le*, 25 I&N Dec. 541, 2011 WL 2605043 (BIA 2011). (ECF No. 22).

As an initial matter, the scope of a district court's review under § 1421(c) is congruent with USCIS's power to naturalize a person in the first place. *See, e.g.*, *Ajlani v. Chertoff*, 545 F.3d 229, 239–41 (2d Cir. 2008). If USCIS had the power to apply *nunc pro tunc* review and to determine if *Matter of Le* applies retroactively, then, as set forth in the Court's prior Order, (ECF No. 17), the Court's *de novo* review under § 1421(c) encompasses USCIS's determinations on *nunc pro tunc* relief and retroactivity.

Equitable relief in the form of a *nunc pro tunc* instruction "is generally reserved for exceptional circumstances of significant agency error." *Maniulit v. Majorkas*, No. 3:12-cv-04501-JCS, 2012 WL 5471142, at *5 (N.D. Cal. Nov. 9, 2012) (citing *Edwards v. INS*, 393 F.3d 299, 309 (2nd Cir. 2004)). Further, a court's use of equitable relief in the context of judicial review for immigration cases is limited: it cannot ignore, modify, or change the "terms

and conditions specified by Congress," nor can it "ignore [a] defect and grant citizenship." *I.N.S. v. Pangilinan*, 486 U.S. 875, 884 (1988) (citations omitted).  In other words, as the United States Supreme Court in *I.N.S. v. Pangilinan* explained, equitable relief cannot disregard explicit statutory provisions or contravene the expressed intent of Congress. *See id.* at 884–85; *Edwards*, 393 F.3d at 310.  Indeed, the statute governing Petitioner's naturalization application, 8 U.S.C. § 1421, declares, "[a] person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter *and not otherwise*." 8 U.S.C. § 1421(d) (emphasis added).

The Government's sole argument appears to be that the admissibility findings cannot be applied *nunc pro tunc* because the 2009 adjustment was obtained by mistake and void *ab initio*. (Gov't Mot. Summ. J. ("MSJ") at 9, ECF No. 26).  The Government does not argue that Petitioner did not otherwise comply with the substantive requirements; rather, the Government merely argues that USCIS's 2009 decision was valid and the fact that lawful permanent residence was obtained by mistake is of no consequence because USCIS correctly interpreted the law in denying Petitioner's naturalization application. (*Id.* at 8–10).  The Government argues that retroactive application of *Matter of Le* would only put Petitioner in a position where she was eligible to apply for admission, but would not overcome the statutory bar to naturalization that now exists—namely that Petitioner has never been lawfully admitted for permanent residence. (*Id.* at 10–11).

The Government's argument is circular and unavailing.  In essence, the Government would have the Court bar Petitioner's naturalization application solely because the granting of permanent residency was a mistake, which the Government subsequently recognized was a mistake—notwithstanding the fact that the Government's "mistake" was in fact correct.  As the Government concedes, the only statutory bars to Petitioner's naturalization that now exists is Petitioner's admission for permanent residence—a requirement/status that Petitioner would

have obtained but for the 2009 adjustment decision, the grounds of which decision has since been invalidated by *Matter of Le*.  Thus, a finding that Petitioner did, in fact, meet all the requirements to achieve permanent resident status would not violate *Pangilinan* because it neither changes nor ignores explicit statutory provisions.  As such, the Court is not going beyond that which the Attorney General can do. *Accord Wiedersperg v. I.N.S.*, 189 F.3d 476 (9th Cir. 1999) (stating, in the context of leave to amend a complaint, that a petitioner "might have a redressable claim for equitable relief based on the denial of her application for adjustment of status").  In other words, contrary to the Government's argument, the Court would not be allowing the Petitioner to "circumvent" immigration requirements; instead, it would be finding that the applicant met all requirements upon a full consideration of all proceedings leading up to her naturalization application.

More specifically, *nunc pro tunc* relief does not bypass the interpreted requirement that Petitioner submit her 2007 application for adjustment and be under twenty-one years old at the time of her entry to the United States as a K-2 nonimmigrant. *See* 8 U.S.C. § 1101(a)(15)(K) (providing nonimmigrant classifications); 8 U.S.C. § 1255(d); 8 U.S.C. § 1101(b)(1) (defining a "minor child" as "an unmarried person under twenty-one years of age"); *Regis v. Holder*, 769 F.3d 878, 884 (4th Cir. 2014) (discussing the holding in *Regis v. Holder*, 769 F.3d 878, 884 (4th Cir. 2014) (discussing the holding in *Matter of Le* and its impact on the K-1 and K-2 nonimmigrant process upon judicial review).[3]  Further, Petitioner's requested relief combines the Government's decision in 2009 with her 2007 application. (*See* Resp. 14:5–9, ECF No. 14). That 2009 decision granted Petitioner permanent resident status (albeit mistakenly) created a reasonable inference that Petitioner met all discretionary requirements to properly achieve such status. *See* 8 U.S.C. § 1255(a) ("The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe . . . .").

---

[3]  8 U.S.C. § 1427(a) provides the general requirements for naturalization.

Accordingly, the Court finds that retroactive application of *Matter of Le* is proper under the instant circumstances and that the Government's 2009 decision should be affirmed to the extent that Petitioner should be considered a permanent resident consistent with *Matter of Le.* As such, the Government's 2017 decision denying Petitioner's Form N-400 is set aside with instructions to reconsider consistent with the findings herein.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's Motion for Summary Judgment, (ECF No. 22), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Government's Cross-Motion for Summary Judgment, (ECF No. 26), is **DENIED**.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __31__ day of May, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court